UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL STEVENS, *et al.*

    Plaintiffs,

v.

BECKY SCOTT, *et al.*

    Defendants.

Case No. 2:24-cv-1395 (BRM) (LDW)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is *pro se* plaintiffs' Michael Stevens, Jose Ricardo Burgos Resto, Hector Tolentino, Francisco Hernandez, Freddy Espinal, and Michael Diaz ("Plaintiffs") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiffs have paid the filing fee.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes the Complaint should be dismissed in its entirety.

**I. BACKGROUND**

The Court will construe the allegations in the Complaint as true for the purposes of this Opinion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Plaintiffs indicate they are pretrial detainees confined at Hudson County Correctional Center ("HCCC"), in Kearny, New Jersey. (*See* ECF No. 1 at 2-3.) Plaintiffs bring this civil rights action, pursuant to 24 U.S.C.

§ 1983, against Director Becky Scott ("Scott"), Doctor Ibraham ("Ibraham"), Well Path, Hudson County Department of Corrections Dentist, Captain Williams ("Williams"), Sergeant Howard ("Howard"), and Dental Assistant Beatrix Docherty ("Docherty"). (*See generally* ECF No. 1.)

The Complaint consists of many conclusory statements, as well as duplicative allegations relevant only to Plaintiff Stevens that are raised by Plaintiff Stevens in a separate civil action before this court, *Stevens v. Scott*, No. 24-3122. At the outset, the Court will address the facts alleged by Plaintiffs as a whole. Plaintiffs allege that Defendant Scott was the "overseer of all prison officials/occupants [and] failed to address the Covid-19 pandemic." (ECF No. 1 at 3-4.) Plaintiffs submit that Defendant Scott failed to "address the crumbling medical department and [their] unanswered grievances." (*Id.* at 5.) The Complaint alleges that Defendant Ibraham failed to protect Plaintiffs from Covid-19 and for over a year their medical complaints went unanswered. (*Id.* at 4, 6.)

Plaintiffs allege that Defendant Well Path was prison medical provider and has failed to give Plaintiffs' copies of "issues trying to get addressed." (*Id.* at 6.) Additionally, the Complaint submits that Defendant Well Path "failed to provide information and sanitary measures for Covid-19." (*Id.*)

The Complaint raises several conclusory allegations against Defendants Williams and Howard. (*Id.* at 7.) Plaintiffs submit that Defendants Williams and Howard refused to give Plaintiffs' protection from Covid-19 and failed to provide supplies to combat Covid-19. Defendants Williams and Howard failed to address administration ignoring the grievance system. (*Id.*) Finally, Plaintiffs claim Defendant Williams failed to provide religious figures for pray services and failed to provide Plaintiffs with access to the law library.

2

Regarding, Plaintiff Stevens' duplicative allegations, he alleges Defendant Scott was in control when (1) he was denied access to his father's funeral, (2) he was denied access to the law library from December 2021 to 2023, (3) he was denied religious instruction from November 2021 to present, and (3) the jail threw out his legal mail in 2023. (*Id.* at 5.) Finally, Plaintiff Stevens claims Defendant Hudson County Department of Corrections Dentist refused to address an issue with Plaintiff Stevens' infected and painful tooth for five months. (*Id.* at 6-7.) Plaintiff alleges dental assistant Beatrix Docherty was the assistant to the dentist who refused to fix his tooth for five months. (*Id.* at 7.)

Plaintiffs seek monetary compensation.

## II. LEGAL STANDARD

### A. *In forma pauperis* complaints

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiffs are prisoners who are proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To

survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

### A. Failure to State a Claim- Supervisory Liability

Although Plaintiffs' allegations are vague, the Court construes the Complaint as asserting a supervisory liability claim against Defendant Scott. (*See* ECF No. 1 at 3-5.)

A plaintiff may establish supervisory liability under § 1983 by showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). "Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

"[T]o hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in

5

responding to COVID unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

Plaintiffs appear to seek to hold Defendant Scott liable based on deficient policies or practices at HCCC. Plaintiffs plead that Defendant Scott as the "overseer" of the prison, failed to address the Covid-19 pandemic and failed to address the "crumbling medical department." (ECF No. 1 at 3-5.) If Plaintiffs are asserting deficient policies, they have failed to plead sufficient facts. Plaintiffs do not identify a specific policy or policies that Defendant Scott failed to employ. Rather, Plaintiffs allege only that Defendant Scott failed to address the pandemic. Plaintiffs' Complaint does not address what policies or protocols were in place to prevent the spread of the Covid-19 virus and how these policies were deficient. Plaintiffs do not address whether Defendant Scott was aware that HCCC's Covid-19 policies created an unreasonable risk of a constitutional injury, nor does it address that Defendant Scott was indifferent to said risk. Additionally, Plaintiffs fail to plead facts regarding any policies relevant to the medical department or that Defendant Scott was aware of deficiencies in the medical department. Thus, Plaintiffs fails to state a viable cause of action under Section 1983 for supervisory liability based on deficient policies against Defendant Scott. *See Iqbal*, 556 U.S. 662, 678 (2009).

**B. Failure to State a Claim- Deliberate Indifference to Medical Needs**

The Court construes the Complaint as raising a Fourteenth Amendment deliberate indifference claim against Defendants Ibraham and Well Path. Plaintiffs allege Defendant Well Path "failed to provide information and sanitary measures for Covid-19." (*Id.* at 6.)

*1. Defendant Ibraham*

The Court construes the Complaint as raising a Fourteenth Amendment failure to provide adequate medical care claim. Plaintiffs make a conclusory allegation that Defendant Ibraham failed

to protect Plaintiffs from Covid-19 and medical complaints went unanswered for a year. (ECF No. 1 at 4, 6.)

A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Nevertheless, the United States Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. *See id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Thus, in the context of claims for inadequate medical care, the Third Circuit has "found no reason to apply a different standard than that set forth in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *See id.*

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege (1) a serious medical need and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's

attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical needs. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiffs' claim that Defendant Ibraham failed to protect inmates from Covid-19 and failed to answer medical complaints is conclusory. The Complaint is devoid of facts regarding any serious medical need any Plaintiff had, nor does it contain any allegations that Plaintiffs were denied any particular medical treatment. Plaintiffs also fails to submit facts regarding specific medical complaints that were ignored. The Complaint fails to state a plausible Fourteenth Amendment claim against Defendant Ibraham.

### 2. *Defendant Well Path*

A private or government healthcare provider like Well Path cannot be held liable under Section 1983 for the unconstitutional acts of its employees under a theory of respondeat superior. *See Natale*, 318 F.3d at 583–84. Rather, a healthcare provider is subject to liability under Section 1983 only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (*citing Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–694 (1978)); *see also Perry v. Well-Path*, No. 20-

2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("[T]o hold a private health care company like Well-Path liable for a constitutional violation under § 1983, a prisoner must allege the provider had a relevant policy [ ] or custom, and that the policy caused the constitutional violation [he] allege[s].") (internal quotation marks omitted). Plaintiff has not alleged that Well Path had a policy or custom that caused the alleged violation of his constitutional rights. *See, e.g.*, *Butler v. CFG Health Servs. Inc.*, No. 21-13354, 2022 WL 138085, at *3 (D.N.J. Jan. 12, 2022) ("[T]o hold CFG Health Services liable for his injuries, Plaintiff must provide facts showing that this entity had a relevant policy or custom, and that policy violated his constitutional rights. Here, Plaintiff provides no facts to suggest that there is a relevant policy or custom or that the policy or custom caused any constitutional violations.") The Complaint fails to plead any facts regarding Well Path's policies or customs. Accordingly, the deliberate indifference claim against Well Path will be dismissed without prejudice.

**C. Failure to State a Claim- Conditions of Confinement**

The Complaint appears to raise Fourteenth Amendment conditions of confinement claims against Defendants Williams and Howard. (*See* ECF No. 1 at 7.) Plaintiffs again make conclusory allegations against Defendants Williams and Howard. The Complaint alleges these Defendants refused to provide Covid-19 protection and supplies and failed to address the administration ignoring the grievance system. (*Id.*)

To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective

9

component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Additionally, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

Plaintiffs fail to plead facts showing that Defendants Williams and Howard acted with deliberate indifference, meaning that they consciously disregarded a serious risk to his health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.") (quoting *Farmer*, 511 U.S. at 837); *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."). Knowledge may be shown where the official has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67–68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,

10

and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842.

Here, Plaintiffs fail to allege what Covid-19 prevention measures were in place and how Defendants Williams and Howard were involved in those measures. Plaintiffs do not plead facts that Defendants Williams and Howard knew of any risk to these particular Plaintiffs or how they disregarded said risks of harm. Plaintiffs also fail to provide facts regarding how Defendants Williams and Howard were involved in the grievance process or that these Plaintiffs personally filed grievances. Plaintiffs offer only conclusory allegations and fail to state a Fourteenth Amendment conditions of confinement claim against Defendants Williams and Howard.

**D. Failure to State a Claim - First Amendment**

Finally, Plaintiffs allege that Defendant Williams violated their First Amendment rights by failing to provide Plaintiffs with access to the law library and leaders for pray services. (ECF No. 1 at 7.)

### *1. Access to the Courts*

It is well-settled that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury." *Ross v. Clerk of Courts of Court of Common Pleas of Philadelphia*, 726 F. App'x 864, 865 (3d Cir. 2018) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). A complaint raising an access to the courts claim "must describe the underlying

11

claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Christopher v. Harbury*, 536 U.S. 403, 416–18 (2002).

Here, Plaintiff alleges they were denied access to the law library. The Complaint, however, fails to allege any facts concerning the merits of any ongoing criminal or civil court claims that Plaintiffs were pursuing. Nor do Plaintiffs allege that they suffered an actual injury because of the lack of law library access. Plaintiffs fail to sufficiently plead a First Amendment access to the courts claim.

### 2. *Free Exercise of Religion*

The Complaint submits that Defendant Williams failed to hire a "iman/priest to pray for services." (ECF No. 1 at 7.)

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Free Exercise Clause of the First Amendment applies to the states through the Fourteenth Amendment. *Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940). "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). Sincerely held beliefs, religious in nature, are entitled to constitutional protection, but "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000). A prison regulation alleged to impinge upon an inmate's First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

To establish a free exercise violation, Plaintiffs must show that Defendant Williams burdened the practice of their religion by preventing them from engaging in conduct mandated by their faith without a justification reasonably related to legitimate penological interests. *Id.* The Complaint fails to plead facts regarding what religious beliefs Plaintiffs hold, what conduct their religion mandates, and how Defendant Williams prevented them from engaging in said conduct. Plaintiffs fail to state a First Amendment free exercise of religion claim against Defendant Williams. Therefore, the Court will dismiss this claim and all of the above discussed claims without prejudice.

**E. Other Claims**

In the Complaint, Plaintiff Stevens raises claims against Defendants Scott and the Hudson County Department of Corrections dental staff. (*See* ECF No. 1 at 5–7.) Plaintiff Stevens alleges Defendant Scott was in control when (1) he was denied access to his father's funeral, (2) he was denied access to the law library from December 2021 to 2023, (3) he was denied religious instruction from November 2021 to present, and (3) the jail threw out his legal mail in 2023. (*Id.* at 5.) Plaintiff Stevens also claims Defendant Hudson County Department of Corrections Dentist refused to address an issue with Plaintiff Stevens' infected and painful tooth for five months. (*Id.* at 6-7.) Plaintiff alleges dental assistant Beatrix Docherty was the assistant to the dentist who refused to fix his tooth for five months. (*Id.* at 7.)

The Court takes judicial notice pursuant to Federal Rule of Evidence 201(b)(2), that on March 14, 2024, Plaintiff Stevens filed a separate complaint which the Clerk of Court docketed and opened in Civil Action No. 24-3122. (Case No. 24-3122, ECF No. 1.) Plaintiff Stevens also filed a proposed amended complaint in Civil Action No. 24-3122 on April 29, 2024. (*See id.*, ECF No. 7.) Upon review, Plaintiff Stevens brings the above listed claims against Defendant Scott in

both the Complaint and the amended complaint in 24-3122. (*Compare* No. 24-1395, ECF No. 1 at 5-7, *with* No. 24-3122, ECF No. 5 at 8.) Accordingly, the Court will dismiss with prejudice the above listed claims against Defendant Scott that are exclusive to Plaintiff Stevens. Plaintiff shall proceed with these claims in Civil Action No. 24-3122.

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiff Stevens' claims against Defendant Scott with prejudice as duplicative. The Court will dismiss the remainder of Plaintiffs Complaint without prejudice. The Court shall give Plaintiffs thirty days to file an amended complaint if they so choose to cure the deficiencies discussed above. An appropriate Order follows.

Dated: June 28, 2024

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**